Petition for Discretionary Review   **1648-14**   (I)

Court of Criminal Appeals of Texas

ORIGINAL

No. 11-12-00317-CR

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 02 2015

Abel Acosta, Clerk

Rickey Lavelle Taylor, ~~Appellate~~ Appellant

V.

The State of Texas, Appellee

FILED IN
COURT OF CRIMINAL APPEALS

MAR 03 2015

Abel Acosta, Clerk

Appeal from cause No. A-39,256
244th District Court, Ector Co., Tx.
Honorable Judge James Rush,
(Judge Presiding)

Brief of Appellant
Rickey Lavelle Taylor, TDCJ# 1789782
Coffield Unit 2661 FM 2054
Tennessee Colony, Texas 75884

\*Oral Argument Waived

I) Statement of Case

A) Pursuant to Rule 38.1 (d) of the Texas Rules of Appellate Procedure, makes his preliminary statement. This is an appeal from a conviction for murder and felon in possession of a firearm, under Tx Penal Code §§ 19.02 and 46.04, respectively. Appellant pled "Not Guilty", but was convicted of both offenses. Appellant was sentenced by jury to 25 yrs. to serve in TDCJ

for the offense of MURDER AND TEN (10) YEARS IN TDCJ for "FELON IN POSSESSION of A firearm. APPELLATE APPEALS THESE CASES/CONVICTIONS.

## STATEMENT of PROCEDURAL HISTORY

A) ON SEPTEMBER 28TH, 2012 A CONVICTION for AFORESAID OFFENSES WAS HANDED DOWN & APPEAL REQUESTED. ON JUNE 13TH, 2013 APPEAL BRIEF WAS SERVED TO THE STATE of TEXAS IN ACCORDANCE WITH TX RULES of APPELLATE PROCEDURE. AN OPINION WAS HANDED DOWN ON NOVEMBER 26, 2014. THE OPINION WAS TO AFFIRM THE CONVICTION ON CASE CAUSE No. A-39,256.

B) A REQUEST for EXTENTION TO FILE PETITION for DISCETIONARY REVIEW WAS DULY SUBMITTED BY APPELLANT ON 12-18-14 AND GRANTED for EXTENTION UNTIL FEBRURARY 27TH, 2015.

(1)

# INDEX of AUTHORITIES

Miller v. State, 815 S.W. 2d 585 (Tx.Crim.App.1991) - - -

Arnwine v. State, 20 S.W. 3d 158 [4] (Tx.App. Texarkana 2000, No Pet.) - - -

Tx. Penal Code § 9.22 - - - -

# GROUNDS FOR REVIEW

GROUND 1: TRIAL COURT ERRED BY DENYING REQUEST BY APPELLANT FOR A JURY INSTRUCTION ON THE JUSTIFICATION OF NECESSITY.

# TABLE OF CONTENTS

STATEMENT OF CASE — I

STATEMENT OF PROCEDURAL HISTORY — 1

INDEX OF AUTHORITIES — II

GROUNDS FOR REVIEW — III

ARGUMENT — 2

~~...............................................~~

PRAYER — 3

TABLE OF CONTENTENTS — IV

# ARGUMENT

TX. PENAL CODE §9.22 EXPLAINS JUSTIFICATION OF NECESSITY.

IT IS UNDERSTOOD THAT AN ACCUSED HAS THE RIGHT TO AN INSTRUCTION ON ANY DEFENSIVE ISSUE RAISED, WHETHER THAT EVIDENCE BE WEAK OR STRONG UNIMPEACHED OR ~~CONTRACTED~~ CONTRADICTED, AND REGARDLESS OF WHAT THE TRIAL COURT MAY OR MAY NOT THINK ABOUT THE CREDIBILITY OF THE EVIDENCE[1]. THE RULE IS TO THAT A JURY, NOT THE JUDGE[2]. WHEN A JUDGE REFUSES TO GIVE AN INSTRUCTION ON A DEFENSIVE ISSUE RAISED BECAUSE THE EVIDENCE SUPPORTING IT IS WEAK OR NOT, HE EFFECTIVELY SUBSTITUTES HIS JUDGEMENT ON THE WEIGHT OF THE EVIDENCE FOR THAT OF THE JURY[3].

DID lower COURT ERR IN JUDGEMENT OF MILLER V. STATE, 815 SW.2d 582, 585 ?

(1) MILLER V. STATE, 815 SW 2d 582

(2) MILLER V. STATE, 815 SW 2d 585

(3) WOODFOX V. STATE, 742 SW 2d 408, 410 (TX. CRIMINAL. APP. 1987)

(2)

## PRAYER

Appellant Rickey Lavelle Taylor requests, respectfully, that this court reverse the trial court decision/judgement and remand this matter for new trial. Appellant prays for all relief at law which he is entitled)

Respectfully submitted,

Rickey L. Taylor #1789782
Coffield Unit
26601 FM 2054
Tennessee Colony, TX 75884

(3)



In The

# Eleventh Court of Appeals

No. 11-12-00317-CR

RICKEY LAVELLE TAYLOR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 244th District Court

Ector County, Texas

Trial Court Cause No. A-39,256

## MEMORANDUM OPINION

The jury convicted Appellant, Rickey Lavelle Taylor, of murder and unlawful possession of a firearm. Appellant pleaded "true" to two enhancement paragraphs for prior felony convictions that occurred in Georgia. The jury assessed punishment at confinement for twenty-five years for the murder conviction and ten years for the unlawful possession of a firearm conviction. The jury also assessed fines of $3,000 for each conviction. The trial court sentenced Appellant accordingly. Appellant asserts five issues on appeal that include one

sufficiency issue and two evidence admission issues as well as claims that the trial court failed to instruct the jury on a necessity defense and that Appellant's trial counsel was ineffective. We modify and affirm.

## I. *The Charged Offenses*

The grand jury indicted Appellant for the murder of Johnny Lee Mackey and for unlawful possession of a firearm. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of the individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (West 2011). The State provided notice of two enhancement paragraphs: a prior felony conviction for attempted burglary and a second felony conviction for aggravated assault. The punishment range for a murder conviction, as enhanced by two prior felony convictions, is confinement for life or confinement for not less than twenty-five years or more than ninety-nine years. *Id.* § 12.42(d) (West Supp. 2014). Section 12.42(d) does not authorize any fine. *Id.*

A person commits the offense of unlawful possession of a firearm, as a felon, if he possesses a firearm before the fifth anniversary of his release from confinement following conviction of the felony or his release from supervision under community supervision, parole, or mandatory supervision, whichever date is later. *Id.* § 46.04(a)(1). The punishment for Appellant's conviction for the third-degree felony offense of unlawful possession of a firearm by a felon was enhanced with one prior felony conviction. *See id.* §§ 12.42(a), 46.04(a), (e). Thus, the applicable punishment range was confinement for a term of not more than twenty years or less than two years and an optional fine of no more than $10,000. *Id.* § 12.33. Appellant pleaded "not guilty" to both counts and proceeded to trial.

## II. *Evidence at Trial*

Amanda Davis, who was twenty-three years old at the time of trial, met Appellant in October 2008 and began a romantic relationship with him. Davis lived with Appellant, whom she described as her boyfriend, in Odessa, beginning

in December 2008. Appellant kept clothes at the house, received his mail there, and helped pay the utilities. He also attended church with Davis. According to Davis, Appellant did not use alcohol.

Davis said trouble began between Appellant and the victim, Johnny Lee Mackey, when she was accused of cheating on Appellant by seeing the victim, a former boyfriend. Davis and the victim had a child together, J.M.,[1] and they had lived together for approximately two years before Appellant and Davis began their relationship. Davis characterized her relationship with the victim as good in the beginning, but she said that he later became abusive, both physically and verbally, which led to the filing of criminal charges against the victim and to the end of their relationship in August 2008. She described the victim as a gang member with a history of violent behavior.

The victim was placed in jail in August 2008 in connection with an assault against Davis. He bonded out of jail in February 2009, and on February 24, 2009, the victim went to Davis's home. Davis testified that the victim came to see J.M., but J.M. was not there. Davis, who was pregnant with Appellant's child, said that Appellant asked the victim to sit down and calmly talk about the situation but that the victim responded that he only wanted to talk to Davis. Davis said that the victim got mad and argued with Appellant; the victim then demanded that Appellant leave because this was the victim's family, not Appellant's family. Davis said that Appellant went into a bedroom and that the victim followed him into the bedroom, where they continued to argue.

Davis said that Appellant picked up a gun, which Davis had gotten from the victim, and pointed it at the victim. Appellant asked the victim, who had a beer bottle in his hand, to leave. When the victim did not leave, Appellant shot a bullet into the wall. At this point, the victim's cousin, Michael Ray Pherguson, who had come to the house with the victim, went into the bedroom to get the victim to

---

[1]J.M. was five years old at the time of trial.

leave. Appellant fired more shots as the victim turned toward the front door. The victim fell down after Appellant shot him. Davis said that the victim made no aggressive moves toward Appellant and that, after being shot, the victim was on the floor crawling toward the front door. Davis testified that the victim crawled to the front doorway and that she went next door to call 911. She returned and rolled the victim over, but she did not know what to do. Appellant took Davis's car and drove away. The victim died as a result of the gunshot wounds inflicted by Appellant.

Michael testified that he and the victim were members of the same gang but were no longer active in that gang and that both he and the victim had been to prison. Michael had been convicted of the felony offenses of assault on a police officer and evading arrest. Michael said that the victim had been in jail for an assault on Davis. On the day of the shooting, Michael and the victim had been drinking, and in the evening, they went to Davis's house to see the victim's child, J.M. Michael said that he was at Davis's house when the victim was shot. Michael said that he had never seen Appellant before but that Appellant and the victim argued and exchanged words and that Appellant pointed a Ruger semiautomatic .22 caliber handgun at the victim.

Michael tried to get the victim to leave the house. Instead, the victim threw a vacuum cleaner, and Appellant shot the victim several times as Michael was trying to get them out of the way. The victim fell, and Michael tried to pick the victim up. Appellant then stepped over Michael and left the house. Michael went outside, got into his suburban, and drove to a nearby convenience store to call the police.[2] Michael said that the victim was not armed and made no threatening gestures toward Appellant.

Appellant testified and admitted that he shot the victim, but he claimed that he did so in self-defense when the victim moved toward him. Appellant said that he shot at the victim as Appellant tripped over the bed. The victim had come to the

---

[2]Davis testified that she did not have a telephone in the house.

4

house to see J.M. and Davis even though the victim had signed a protective order in which he agreed to stay away. When the victim arrived at the house, Appellant tried to get the victim to sit down and talk with him. The victim had a beer bottle in his hand and appeared to be intoxicated. Appellant acknowledged that the victim had a right to see J.M., but the victim only wanted to talk to Davis. Appellant argued with the victim, and arguments that started in the living room moved to the bedroom. Appellant remarked that the victim had been cursing at both Davis and Appellant and that Appellant had asked the victim several times to leave the house. Appellant said that he did not feel like he was in imminent danger when the victim was outside.

Appellant said that he picked up a handgun in the bedroom but that he did not immediately point it at the victim. The victim knocked over a vacuum cleaner, and Appellant shot a bullet into a wall to scare the victim so he would leave. Michael came into the bedroom and tried to get the victim to leave. The victim did not leave but, rather, continued to curse. Appellant said that he then fired several shots at the victim when the victim moved toward him. Appellant said that he thought that the victim would take the gun away from him and shoot him and that, therefore, he was in fear for his life when he shot the victim.

Appellant testified that he left the house because he did not want to go to jail; he took Davis's car and left. Appellant admitted that he disposed of the .22 caliber handgun after he left the house. Appellant went to a friend's house and met Davis later, and they both headed for Dallas in a stolen pickup. Appellant admitted that he was arrested while he was in Dallas and that, on two occasions, he had escaped from the Ector County Detention Center while the charges in this case were pending.

Appellant admitted that he had prior convictions in Georgia for aggravated assault, burglary, theft, making a terroristic threat, receiving stolen property, and possession of cocaine; he also admitted to using several aliases. Appellant knew that the victim mistreated Davis, that the victim had been in jail, that the victim had

5

been released, and that the victim claimed that Appellant was "messing with [the victim's] girlfriend"; Appellant also was aware that the victim, who was a gang member, had shot at Tasha Linch's son and at her nephew. Appellant said that, because of the victim's behavior, Davis and Appellant sought a protective order against the victim. He further testified that, on a previous occasion, police had come to the house in connection with an altercation with the victim. Appellant also admitted that he purchased bullets for the .22 caliber handgun and that he loaded the gun with the bullets that he had purchased. Appellant further admitted that he was a felon on parole at the time that he shot the victim with the firearm.

Shawn Calendar, a burglary detective with the Odessa Police Department, testified that he responded to the shooting at Davis's home and found the victim lying in the doorway with Davis bent over him and two black males, Michael Pherguson and Quinton Pherguson, nearby. Both Michael and Quinton identified the victim as their cousin. Detective Calendar spoke to Davis, and he also observed bullet holes in the walls of the home.

The Odessa Police Department sent crime scene technicians to the house. They videotaped and photographed the crime scene and collected evidence and fingerprints.

Marc Krouse, a physician and the deputy chief medical examiner in Fort Worth, performed the autopsy on the victim and determined the cause of death. Dr. Krouse testified that he examined the victim's body, took photographs, and prepared a report. Dr. Krouse indicated that he observed six gunshot wounds to the victim and that one .22 caliber bullet had exited the body. The victim had been shot in the left and right chest, abdomen, leg, and head; death was caused by the cumulative effect of the gunshot wounds. The victim had alcohol and cocaine in his system and was intoxicated at the time of his death. The gunshot wound behind the victim's left ear was inflicted as the victim was turning away and was less than three feet from the shooter.

Adam Barboza served as a detective with the Odessa Police Department and was a part of the murder investigation. Detective Barboza spoke to Michael, and Michael told him that he had tried to get the victim to leave Davis's house. He said that the victim was upset because the gun that Appellant held on the victim was the victim's own gun.

Matthew Palfreyman, a sergeant with the Balch Springs Police Department, testified that he stopped a stolen pickup. Both occupants of the pickup, a black male and a female, gave false names. Later, the male admitted that his name was Rickey Taylor, that he had killed someone, and that there was a warrant for his arrest.

Larry Kiker, a patrol officer with the Odessa Police Department, was dispatched to investigate Appellant's first escape from custody in Ector County. Officer Kiker testified that Appellant escaped through an unlocked door around midnight and was returned to custody at 10:00 a.m. that same morning. Lucas Gonzales Mesa III, a deputy with the Ector County Sheriff's Department, who was working at the Ector County Detention Center, testified that he was asked to check on the status of Appellant in jail and that he discovered Appellant had escaped. Paul Deleon, an investigator for the Ector County Sheriff's Department, testified that he was sent to an apartment in Odessa to locate Appellant. Appellant was located and apprehended as he was trying to climb out of an apartment window.

Deputy Mathew McCrury of the Ector County Sheriff's Department testified that he had checked on Appellant in his jail cell and discovered that Appellant had escaped a second time. Deputies subsequently located Appellant at a Motel 6 and again returned him to custody.

Tasha Marie Linch testified that the victim had used a gun to shoot at her son and at her nephew; she characterized the victim as a violent man. Gloria Jean Clark, a victim's assistant in the Ector County District Attorney's office, testified that Davis had applied for a protective order against the victim the day before the victim was shot and that Appellant had also been to Clark's office a few days

7

earlier. Alexandria Kennedy testified that Appellant's usual demeanor was calm and collective and that he was a very nice and decent guy, but that he was different on the night of the shooting and did not seem to be himself. Kennedy acknowledged that she was unaware of his prior convictions for theft, burglary, and other offenses. Tiffany Ann Goff testified that Appellant was agitated and afraid on the night of the shooting and that he had asked her to take him to a friend's house; she said that he was usually "laid back" unless he was upset at Davis.

### III. *Issues Presented*

Appellant presents five issues. First, he asserts that his trial counsel was ineffective. Second, Appellant claims that the trial court erred when it admitted evidence of his prior convictions. Third, Appellant claims that the admission of flight evidence was in error. Fourth, Appellant claims that the trial court should have given a necessity instruction to the jury. Finally, Appellant asserts that the evidence was insufficient to convict him of murder.

### IV. *Standard of Review*

We apply the well-recognized *Strickland* standard of review to review Appellant's complaint of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). We review a trial court's ruling on the admission of extraneous offense evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We also review the trial court's admission of prior convictions under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). Likewise, we review the decision to admit evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex. Crim. App. 1991). As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold the ruling. *De La Paz*, 279 S.W.3d at 343–44; *Montgomery*, 810 S.W.2d at 391.

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). We must first determine whether error occurred. If so, we must then evaluate whether the error requires reversal. *Id.* at 731–32. We review the sufficiency of the evidence under the standard of review in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

V. <em>Analysis</em>

We will address Appellant's sufficiency issue first followed by his other four issues.

### A. Issue Five: Sufficiency of the Evidence

Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As the sole judge of the credibility of the witnesses, the jury may accept or reject any or all of a witness's testimony, and we defer to the jury to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences to reach ultimate facts. *Gross v. State*, 380 S.W.3d 181, 185 (Tex. Crim. App. 2012); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

Appellant testified and admitted that he shot the victim several times, but claimed to have done so in self-defense. The jury heard evidence from Michael and Davis that the victim, although cursing and arguing, did not threaten Appellant and made no aggressive moves toward Appellant. Appellant testified that he thought he was in immediate danger when the victim entered the house. And, although Appellant claimed that the victim had moved toward him and that he shot the victim in response, the victim was unarmed. The jury could disbelieve part or all of Appellant's testimony. Appellant admitted that he fled after shooting the victim and that he had twice escaped while awaiting trial in this case. *See*

9

*Santos v. State*, 961 S.W.2d 304, 305 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (flight indicates consciousness of guilt). Appellant also admitted that he got rid of the gun following the shooting; that is further evidence of consciousness of guilt. *See Martin v. State*, 151 S.W.3d 236 (Tex. App.—Texarkana 2004, pet. ref'd). Having reviewed the entire record, we hold that a rational jury could have found beyond a reasonable doubt that Appellant intentionally or knowingly caused the victim's death. Appellant's fifth issue on appeal is overruled.

### B. Issue One: Ineffective Assistance of Counsel

Appellant claims that his trial counsel was ineffective because trial counsel asked witnesses about Appellant's demeanor; the trial court ruled that, by asking those questions, the door had been opened for the admission of Appellant's prior convictions. The benchmark for evaluating an ineffective assistance of counsel claim is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The *Strickland* test has two prongs: (1) a performance standard and (2) a prejudice standard. *Id.* at 687. For the performance standard, we must determine whether Appellant has shown that counsel's representation fell below an objective standard of reasonableness. *Id.* If so, we then determine whether there is a reasonable probability that the outcome would have differed but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003); *Strickland*, 466 U.S. at 686; *Andrews*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005).

The reasonable probability must rise to a level that undermines confidence in the outcome of the trial. *Isham v. State*, 258 S.W.3d 244, 250–51 (Tex. App.—Eastland 2008, pet. ref'd). A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Andrews*, 159 S.W.3d at 101. A reviewing court need not consider both prongs of the *Strickland* test and can dispose of an ineffectiveness claim on either prong. *Walker v. State*, 406 S.W.3d

10

590, 594 (Tex. App.—Eastland 2013, pet. ref'd) (citing *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012)); *see Strickland*, 466 U.S. at 697.

The first prong of *Strickland* requires Appellant to establish that trial counsel provided deficient assistance of counsel. There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Isham*, 258 S.W.3d at 250. To overcome this deferential presumption, an allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Usually, a silent record that does not explain counsel's actions will not overcome the strong presumption of reasonable assistance. *Id.*

Appellant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). Generally, the record on direct appeal will not be sufficient to show that trial counsel's representation was so lacking as to overcome the presumption of reasonable conduct. *Bone v. State*, 77 S.W.3d 828, 833–34 (Tex. Crim. App. 2002). We do not inquire into trial strategy unless no plausible basis exists for trial counsel's actions. *Johnson v. State*, 614 S.W.2d 148, 152–54 (Tex. Crim. App. [Panel Op.] 1981). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771.

Appellant claims that, because his trial counsel asked questions about Appellant's demeanor, his prior criminal history was admissible when it otherwise would not have been. Appellant's criminal history was admitted when Appellant testified. The criminal history information was brought out in direct examination by Appellant's own trial counsel, perhaps under the impression that the effect of the criminal history might be lessened if Appellant first broached the subject. However, with nothing in the record to reflect trial counsel's strategy about why he

11

asked questions about Appellant's demeanor on the night of the shooting and with nothing in the record to demonstrate that Appellant was prejudiced by this course of action, we hold that Appellant has failed to meet either prong of the *Strickland* standard. We overrule Appellant's first issue on appeal.

### C. Issue Two: Admission of Prior Convictions

Appellant asserts that the trial court erred when it admitted evidence of his prior felony convictions from 1999–2005 because, under Rule 403 of the Texas Rules of Evidence, the probative value of the impermissible character evidence was substantially outweighed by the unfair prejudice to him. Appellant also argues that, under Rule 609 of the Texas Rules of Evidence, the convictions were too remote and their probative value was outweighed or substantially outweighed by the prejudice to him.

Even if Appellant is correct in his assertion that the trial court erred, he has waived any error that might exist. Testimony about Appellant's prior convictions occurred at two different times during the trial. First, Kennedy was asked "are you aware" questions following Appellant's counsel's questions about Appellant's "usual" demeanor—which was described as "calm," "collective," "very nice," and "decent"—and Appellant's demeanor on the night of the shooting, which was described as "different" like "he [Appellant] wasn't okay with himself." Second, the prior convictions were acknowledged by Appellant when he answered questions on direct examination from his own counsel. It is well established that questions regarding the admission of evidence are rendered moot if the same evidence is elsewhere introduced without objection; any error in admitting evidence over a proper objection is harmless if the same evidence is subsequently admitted without objection. *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999). Appellant's second issue on appeal is overruled.

### D. Issue Three: Admission of Flight Evidence

Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn. *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App.

12

1989) (citing *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981); *Holloway v. State*, 525 S.W.2d 165, 167–68 (Tex. Crim. App. 1975)); *see* TEX. R. EVID. 401. To support the admission of evidence of escape from custody or flight, it must appear that the escape or flight pertains to the offense under prosecution. *Rumbaugh v. State*, 629 S.W.2d 747, 752 (Tex. Crim. App. 1982); *Wockenfuss v. State*, 521 S.W.2d 630, 632 (Tex. Crim. App. 1975) (evidence of flight, in bail-jumping, may be construed as evidence of guilt); *Hodge v. State*, 506 S.W.2d 870, 873 (Tex. Crim. App. 1974). To have such evidence excluded under relevancy challenges, the burden shifts to the defendant to show affirmatively that the escape and flight directly connected to some other transaction and that it was not connected with the offense at trial. *Wockenfuss*, 521 S.W.2d at 632; *Hodge*, 506 S.W.2d at 873. Flight is no less relevant if it is only flight from custody or to avoid arrest. *Foster*, 779 S.W.2d at 859; *Hunter v. State*, 530 S.W.2d 573, 575 (Tex. Crim. App. 1975); *Fairris v. State*, 515 S.W.2d 921, 923 (Tex. Crim. App. 1974).

Appellant argues that, because his escape from custody at the Ector County Detention Center was not in close proximity to the alleged offense and because there was no hot pursuit following his escape, the trial court erred when it allowed the testimony about Appellant's escape from jail. The State points out that escape from custody is generally held admissible as evidence of guilt and that escape from pretrial detention has greater probative value than prejudice. *Rumbaugh*, 629 S.W.2d at 752; *McWherter v. State*, 607 S.W.2d 531, 534–35 (Tex. Crim. App. 1980); *Havard v. State*, 800 S.W.2d 195, 203 (Tex. Crim. App. 1989). Because Appellant was in jail in Ector County awaiting trial on the offenses for which he was indicted in this case, the State met its burden to show relevance of the escapes to the prosecution of this case. Appellant had the burden to rebut that evidence. We find nothing in the record to indicate that Appellant advanced an alternate reason for his flight, and he has cited no case, and we have found none, that

supports his assertions on temporal proximity and pursuit. We overrule Appellant's third issue on appeal.

### E. Issue Four: Necessity Instruction

In his fourth issue on appeal, Appellant claims that the trial court erred when it did not instruct the jury on the defense of necessity. The law provides that the trial court shall "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case [and] not expressing any opinion as to the weight of the evidence." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Our law further provides that a trial court must instruct the jury on statutory defenses, affirmative defenses, and justifications when raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). When we review a claim of jury charge error, we engage in a two-step process. First, we determine whether error exists, and then we "determine whether sufficient harm resulted from the error to require reversal." *Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Necessity is a defense to prosecution for conduct that would otherwise be criminal. *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). To establish necessity, the accused must produce evidence of a reasonable belief that the criminal act was immediately necessary to avoid a greater, imminent harm. PENAL § 9.22; *see also Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010). A "reasonable belief" is one that would be held by an ordinary and prudent person under the same circumstances. PENAL § 1.07(a)(42). "[I]mminent" means "impending, not pending; something that is on the point of happening, not about to happen." *Jackson v. State*, 50 S.W.3d 579, 595 (Tex. App.—Fort Worth 2001, pet. ref'd). Harm is imminent when there is an emergency situation and there is no time to consider whether the conduct is illegal. *Id.*

When we assess the evidence that supports the defense of necessity, we consider the facts that existed at the time of the criminal act and consider the

circumstances from the viewpoint of the accused. *Wood v. State*, 271 S.W.3d 329, 334 (Tex. App.—San Antonio 2008, pet. ref'd); *see also Fitzgerald v. State*, 782 S.W.2d 876, 885 (Tex. Crim. App. 1990). A defendant who asserts a necessity defense must produce some evidence to support his claim. *See* PENAL § 2.03(c). Once the defense is raised, the State bears the ultimate burden of persuasion that the defendant did not act out of necessity and has the burden to prove its case beyond a reasonable doubt. *See id.* § 2.03(d); *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton*, 804 S.W.2d at 913–14). To raise necessity, a defendant must admit he committed the offense and then offer necessity as a justification. *Young*, 991 S.W.2d at 839.

Appellant produced evidence of Davis's generalized fear of the victim and his violent nature and of Appellant's and Davis's fear that the victim might hurt Davis if the victim came over to the house. However, evidence of a generalized fear of harm cannot raise the issue of imminent harm. *See* PENAL § 9.22(1); *see also Chunn v. State*, 821 S.W.2d 718, 719–20 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd). Appellant also described how the confrontation with the victim progressed from outside the door to inside the living room, then to the bedroom, and then continued even after a warning shot, but there is no evidence of the immediacy for a "split second" decision. Without evidence of a "split second decision," such conduct does not contemplate the kind of "imminency" required for the defense of necessity. *See Washington v. State*, 152 S.W.3d 209, 212 (Tex. App.—Amarillo 2004, no pet.). We overrule Appellant's fourth issue on appeal.

### VI. *Unauthorized Fine*

In count one, Appellant was convicted of murder and his punishment was enhanced pursuant to Section 12.42(d) of the Texas Penal Code. Section 12.42(d) does not contain any provision that authorizes a fine to be imposed. PENAL § 12.42(d); *Dolph v. State*, 440 S.W.3d 898, 908 (Tex. App.—Texarkana 2013,

pet. ref'd); *Blevins v. State*, 74 S.W.3d 125, 132 (Tex. App.—Fort Worth 2002, pet. ref'd). When an unauthorized fine has been imposed, an appellate court may reform the judgment to delete the fine. *See Ex parte Youngblood*, 698 S.W.2d 671, 672 (Tex. Crim. App. 1985). The Texas Rules of Appellate Procedure provide this court with authority to modify a judgment when necessary. TEX. R. APP. P. 43.2(b); *Dolph*, 440 S.W.3d at 908. Because the fine imposed against Appellant in count one was unauthorized, we modify the judgment in that count to delete the $3,000 fine.

## VII. *This Court's Ruling*

We modify the judgment of the trial court in count one to delete the $3,000 fine, and as modified, we affirm. We affirm the judgment of the trial court in count two.


MIKE WILLSON

JUSTICE


November 26, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

Rickey Taylor # 1789782
Coffield Unit
2661 FM 2054
Tennessee Colony, TX 75884

LEGAL
MAIL

...URT of Criminal Appeals
BOX 12308 - Capitol Station
Austin, TX 78711