

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-13-00029-CR

---

MARK DOLPH, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 11F-0764-005

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

# OPINION

Mark Dolph, who chose to represent himself for a portion of his trial during the guilt/innocence phase, was convicted by a jury for unlawful possession of a firearm by a felon, sentenced to fifty-eight years' imprisonment, and ordered to pay a $10,000.00 fine.[1] On appeal, Dolph argues that the trial court erred in finding his waiver of counsel and election to represent himself to be knowing, voluntary, and intelligent because the court "failed to admonish him regarding the nature of the charge, the statutory offense included within it, the range of allowable punishment, the possible defenses to the charges and any mitigating circumstances." After reviewing the trial, we find that Dolph was sufficiently admonished in accordance with *Faretta v. California*, 422 U.S. 806, 807 (1975). We find that Dolph waived his right to counsel with full knowledge of the proceedings. Further, he was assisted by counsel during the proceedings at all times. We reform the judgment to delete the assessment of a fine. Otherwise, we affirm the trial court's judgment.

## I. Dolph's Invocation of the Right of Self-Representation Was Made Competently, Knowingly and Intelligently, and Voluntarily

"The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Id.* at 807. "Those amendments also guarantee that any such defendant may dispense with counsel and make his own defense." *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997) (citing *Faretta*,

---

[1]*See* TEX. PENAL CODE ANN. § 46.04 (West 2011), § 12.42(d) (West Supp. 2013).

422 U.S. at 818–20); *see Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942) ("[T]he Constitution does not force a lawyer upon a defendant.").

"When an accused manages his own defense, he relinquishes . . . many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835. These rights must be waived "(1) competently,[2] (2) knowingly and intelligently, and (3) voluntarily." *Collier*, 959 S.W.2d at 625 (citing *Godinez v. Moran*, 509 U.S. 389, 400–01 (1993); *Faretta*, 422 U.S. at 834–36). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams*, 317 U.S. at 279); *see Collier*, 959 S.W.2d at 625. "The decision is made 'voluntarily' if it is uncoerced."[3] *Collier*, 959 S.W.2d at 625 (citing *Godinez*, 509 U.S. at 401).

A trial court need not follow a "formulaic questioning" or particular "script" to assure itself that an accused who has asserted his or her right to self-representation does so with "eyes open." *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991). Yet, from *Faretta*, we gather that if (1) a defendant clearly and unequivocally declares to a trial judge that he wants to represent himself and does not want counsel, (2) the record affirmatively shows that a defendant is literate, competent, and understanding and that he is voluntarily exercising his informed free will, and (3) the trial judge warns the defendant that he thinks it is "a mistake not to accept the

---

[2]Dolph was found to be competent. There is no argument contesting this finding.

[3]We must "indulge in every reasonable presumption against waiver" of counsel. *Brewer v. Williams*, 430 U.S. 387, 404 (1977); *Jordan v. State*, 571 S.W.2d 883, 884 (Tex. Crim. App. 1978).

3

assistance of counsel" and that the defendant will "be required to follow all the 'ground rules' of trial procedure," the right of self-representation cannot be denied. *Faretta*, 422 U.S. at 835–36.

Here, the record establishes that Dolph insisted on representing himself after the trial court warned him of the dangers and disadvantages of such a choice.

Although Dolph had the assistance of the appointed public defender, Derric McFarland, Dolph informed the court of his desire to represent himself on the day of jury selection.[4] Dolph explained, "[T]he reason I ask that is because he sometimes -- or he hasn't filed no motions or, you know, if there's something I want him to do and he tells me he don't want to do it during trial, I figured like that wouldn't be a fair trial." After the court asked Dolph why he believed self-representation would benefit him, Dolph explained the he would make arguments that his counsel would not make—namely, that his bond should be reduced and that the trial court lacked subject matter jurisdiction—and that he would "bring up objections that [McFarland] wouldn't."

The court determined that Dolph could read and write, had a tenth-grade education, and obtained a GED and found that there were no issues relating to competency or mental disease. The court admonished Dolph, "I'm going to have to hold you to the same standard that I would attorneys, in other words, I'm going to have to expect you to follow the rules of evidence and the rules of procedure." The court also reminded him again that he had the right to be represented by counsel. The trial court discussed at length the expectation that Dolph follow the court's

---

[4]The trial court stated, "The Court has appointed you an attorney through the public defender's office and you are electing at this point to forego that representation." The court then obtained Dolph's understanding that he was "giving up [his] right to counsel, by doing this, by going forward and representing" himself.

4

evidentiary rulings[5] and the procedures involved in the criminal proceeding and warned Dolph

that he would not enjoy hybrid representation.[6]

Despite the court's explanations and warnings against hybrid representation, Dolph still

desired to represent himself. The court found:

> Well then -- what -- I've determined that you've got sufficient education, I've determined that you're competent and that you're literate. I have gone over some of the issues that you're going to have to -- that, some of the rights that you have, some of the consequences of representing yourself. I will go through a few more of them. I've kind of explained to you the procedure with respect to the making of objections and the introduction of evidence after the court has made a ruling on the objections.
>
> All right, so you're electing to represent yourself. I've gone through the factors that the Supreme Court identified in *Faretta vs. California*, 422 U.S. 806. If you

---

[5]The court explained,

> THE COURT: Okay. And I'm going to have to expect you to follow my rulings the way that I would expect an attorney to follow the rulings. You understand that? . . . .So that means that if I make a ruling that if, that certain evidence is not admissible, then we'll give you an opportunity to make a record of what the evidence would be outside the presence of the jury, but if I make a ruling that certain evidence is not admissible that's a legal ruling and you can't mention it in front of the jury after I make that ruling, you understand that?
>
> THE DEFENDANT: Yes, sir, Your Honor.
>
> THE COURT: Okay. Because, see, the way it works is that I'm the judge of the law and the jury is the judge of the facts. And as a judge of the law, I decide what facts they get to hear, okay? Based on the law. The law allows certain things to be introduced and doesn't allow certain things to be introduced, and the decision over whether something gets before the jury or not is my decision, it's a legal question. So if an attorney stands up and objects to the introduction of certain evidence, then I have to make a ruling on, under the rules of evidence, whether or not to let the evidence in. If I sustain the objection, then I'm saying it doesn't come in and the jury doesn't get to hear it, and after I make that ruling you have to follow that ruling and not mention it. So do you understand that?
>
> THE DEFENDANT: Yes, sir, Your Honor.

[6]The court warned, "[Y]ou don't have a right to what they call a hybrid representation. In other words, you can't -- you can't have a lawyer and then at the same time jump up and make motions and make objections and introduce evidence contrary to your lawyer's. Either you represent yourself or you have a lawyer and you let the lawyer represent you."

persist in representing yourself, that's your right. We will respect that. I'm going to designate . . . standby counsel to assist you on any legal issues, legal questions that you may have. But you've undertaken to represent yourself in this matter, and so -- you have a right to do that, and so that's what we're going to do.

Dolph's brief admits that the "trial judge's inquiry into Appellant's education, literacy and competency was proper for a *Faretta* hearing, as was the judge's summary of the trial process and warnings that Appellant would be held to the same standards as appointed counsel." We find that the record contains proper admonishments concerning pro se representation and all necessary inquiries to enable the trial court to assess Dolph's knowing exercise of the right to defend himself. *See Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992). Dolph's persistence in asserting his right of self-representation despite the court's admonishments was all that was required in order for the court to determine that the assertion was made purposefully. *See Burgess*, 816 S.W.2d at 426, 429;[7] *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984) (quoting *United States v. Thompkins*, 623 F.2d 824, 825 (2d. Cir. 1980)).

Dolph's only complaint, then, is that there is "insufficient evidence that Appellant knowingly, intelligently, and voluntarily waived his right to counsel." He asserts that "the

---

[7]The court in *Burgess* wrote:

> [The Defendant] unequivocally asserted his right to self-representation. Since *Renfro* [*v. State*, 586 S.W.2d 496 (Tex. Crim. App. 1979),] this Court has observed that a trial court need follow no "formulaic questioning" or particular "script" to assure itself that an accused who has asserted his right to self-representation does so with eyes open. *Blankenship v. State*, 673 S.W.2d 578, [] 583 (Tex.[ Crim. ]App. 1984). *See also Martin v. State*, 630 S.W.2d 952,[] 954 (Tex.[ Crim. ]App. 1982); *Johnson v. State*, 760 S.W.2d 277,[] 278 (Tex.[ Crim. ]App. 1988) (Plurality opinion). It is required only that the record "contain proper admonishments concerning pro se representation and any necessary inquiries of the defendant so that the trial court may make 'an assessment of his knowing exercise of the right to defend himself.' *Faretta*, *supra*, 422 U.S. at 836, 95 S.Ct. at 2541." *Blankenship v. State*, *supra*, at 583.

816 S.W.2d at 428.

6

admonishments that were crucial to Appellant's case were those related to the range of punishment, possible defenses to the statutory offense, and any mitigating circumstances."

## II. Waiver of Counsel—Hybrid Representation

### A. Summary of the Proceedings

During the proceedings, Dolph utilized his standby counsel. The record reflects that McFarland "briefly whisper[ed] to the defendant" during voir dire. McFarland expended effort to secure a witness allegedly favorable to Dolph, issued a subpoena for Dolph, and otherwise advised Dolph when asked for assistance during trial. Most importantly, Dolph stepped aside in the middle of the guilt/innocence phase, and McFarland resumed his place as active counsel for the remainder of the proceeding.

These efforts failed Dolph since the evidence of his guilt was strong. Officer Kelly Dial of the Nash Police Department testified that he witnessed a vehicle pull into "the parking lot of the Country Store" at night to "make a real quick transaction without going inside the store, kind of a hand to hand with another occupant outside—or another person outside of the store, and then they drove away." Dial suspected drug activity. He noticed that the vehicle had an expired tag and made a traffic stop. Dolph "was the passenger in the rear of the vehicle."

Dial testified that the driver of the vehicle gave consent to search. According to Dial, the driver "said that he thought there may be some crack cocaine in a towel in the back seat." Dolph was asked to exit the vehicle. Dial testified, "[Dolph] advised me that there was a gun in the back seat. Or pistol, excuse me, . . . that he was holding . . . for a friend." Dial recovered a

7

"Jimenez Arms .380" semi-automatic pistol that was loaded with "seven rounds, including one in the chamber."

After Dial testified, Dolph argued that the testimony was inadmissible because he believed his *Miranda* rights were violated. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The trial court ruled that the objection was waived because the testimony was previously introduced without objection. This prompted Dolph to ask that McFarland be allowed to represent him. After further discussion and admonishments, the trial court allowed stand-by counsel to resume the role of active trial counsel. McFarland conducted the remainder of the trial, which included Officer Scott Eudy's testimony that Dolph said he was holding the gun for a friend.[8] McFarland also represented Dolph during the punishment phase, wherein Dolph pled true to the State's enhancement allegations.

## B.    Dolph's Arguments

"A judge must investigate as long and as thoroughly as the circumstances of the case before him demand" prior to determining that the right to counsel has been waived.[9]

---

[8]A video recording of the arrest was also played for the jury.

[9]"[C]ourts sometimes consider the right of self-representation in conjunction with the issue of waiver of counsel . . . ." *Cooks v. State*, 169 S.W.3d 288, 293 (Tex. App.—Texarkana 2005, pet. ref'd). We have previously stated,

> [E]xercising the right of self-representation does not require the defendant to first knowingly and intelligently waive the right to the assistance of counsel. *See Saunders v. State*, 721 S.W.2d 359, 362 (Tex. App.—Tyler 1985, pet. ref'd). The defendant's demand for self-representation cannot be denied due to the record's failure to reflect effective waiver of right to counsel. *Id.* The validity of the defendant's assertion of the right to self-representation depends on whether the defendant was aware of the dangers and disadvantages of self-representation, rather than the traditional analysis for waiver of counsel. *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988) (plurality op.).

*Id.* The "defendant's demand for self-representation cannot be denied due to the record's failure to reflect effective waiver of right to counsel." *Id.*

8

*Blankenship*, 673 S.W.2d at 583 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723 (1948)). "To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id. (*quoting *Von Moltke*, 332 U.S. at 723).

Dolph complains that "the admonishments that were crucial to [his] case were those related to the range of punishment, possible defenses to the statutory offense, and any mitigating circumstances."[10] "To assess whether a waiver [of the right to counsel] is effective, courts consider the totality of the circumstances. This means that courts must examine "the particular

---

[10]Dolph argues that this case is similar to that of *Buster v. State,* 144 S.W.3d 71, 74–75 (Tex. App.—Tyler 2004, no pet.). In that case, the trial court allowed the defendant to represent himself—due to an "insurmountable" conflict of interest with his attorney—after issuing admonishments which Dolph mistakenly argues were similar to the ones given by the trial court in this case. *Id*. at 74–75. However, "the [trial] judge did not specifically admonish [Buster] that he would not be granted any relief from the technicalities of the rules of evidence and procedure." *Id.* at 77.

During opening statement, Buster "admitted to committing the offense, but argued that his actions were unintentional because of his diminished capacity or mental incapacity." *Id.* at 75. The jury convicted Buster of assault on a public servant. *Id.* at 76. The court in *Buster* noted that the "judge did not advise Appellant of the range of allowable punishment or of possible defenses to the charges and mitigating circumstances." *Id.* at 77. The court wrote, "Even though the court of criminal appeals has refused to adopt a formula or script to determine a knowing and intelligent waiver, we cannot conclude that an admonishment concerning unfamiliarity with procedural and substantive laws and rights only and covering barely two pages of the statement of facts is sufficient." *Id.* at 77. It held that "his waiver of counsel was not made knowingly and intelligently and, thus, was constitutionally ineffective." *Id.* at 78. *Buster* is distinguishable from this case because the trial court there did not comply with *Faretta*, Buster was not aware of the range of punishment, there were mitigating circumstances and defenses applicable to Buster's case on which he was not admonished, Buster was not appointed standby counsel, and Buster represented himself during the punishment phase. *Id.* at 76.

9

facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008).[11]

At a pretrial hearing, the trial court instructed Dolph that he was "charged by indictment . . . with the unlawful possession of a firearm by a felon, with two prior felony convictions." At that time, Dolph, represented by counsel, expressly waived the reading of the entire indictment. The State explained the range of punishment Dolph would face at trial:

> For the record, Your Honor, the State made an offer to drop Mr. Dolph's enhancement paragraphs. He is double enhanced as an habitual offender, making his punishment range a minimum of 25 years to 99 or life. The State offered to drop those two enhancement paragraphs and plead Mr. Dolph to eight years. That offer expired last Friday. The State now makes an offer to plead him to ten years today. Otherwise, his minimum will be 25 at trial.

McFarland asked Dolph if he understood the statement, and the court asked if he understood the offer. Dolph responded affirmatively.[12] Thus, the record shows that Dolph was aware of the charges against him as well as the range of punishment.[13] Although Dolph complains that the trial court failed to admonish him about possible defenses to the charges and circumstances in mitigation thereof, there is no argument or evidence that any viable defense or mitigating evidence existed or that the trial court had any information regarding possible defenses or mitigating circumstances.

---

[11]The Texas Code of Criminal Procedure contains a form to be signed by a defendant which expressly waives the defendant's right to counsel. TEX. CODE CRIM. PROC. ANN. art. 1.051(g) (West Supp. 2013). No such written waiver of counsel is contained in this record.

[12]Dolph also rejected a fifteen-year negotiated plea agreement.

[13]Further, the failure of the trial court to advise a defendant of the possible punishment range, by itself, does not require reversal. *Halliburton v. State*, 928 S.W.2d 650, 652–53 (Tex. App.—San Antonio 1996, pet. ref'd); *see Smith v. State*, No. 05-03-01282-CR, 2004 WL 1089206, at *8 (Tex. App.—Dallas May 17, 2004, no pet.) (not designated for publication) (holding same).

Waiver of counsel is valid only if the defendant has a broad understanding of the entire matter. Dolph had full knowledge of the entire proceeding and waived counsel after extensive warnings informed him of the possible consequences of his choice.

## C. Dolph Received Assistance of Counsel at all Times

The United State Supreme Court wrote in *Faretta*:

> [The Sixth Amendment] speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists.

*Faretta*, 422 U.S. at 819.

"The term 'standby counsel' usually describes situations when, in response to a defendant's request for self-representation, the trial court instead allows the defendant's attorney to remain as counsel and be available to advise the defendant and participate in the case, or not, as requested by the defendant." *Walker v. State*, 962 S.W.2d 124, 126 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (citing *Faretta*, 422 U.S. at 834). "In such a case, if the defendant thereafter invokes the participation of standby counsel, the representation becomes hybrid, which has been described as 'partially pro se and partially by counsel.'" *Id.* (citing *Landers v. State*, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977)). "The *Faretta* admonishments for pro se defendants are not required for defendants engaged in hybrid representation." *Id.* (citing *Maddox*

*v. State*, 613 S.W.2d 275, 286 (Tex. Crim. App. 1980) (op. on reh'g)); *Robertson v. State*, 934 S.W.2d 861, 865–66 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

We find that Dolph engaged in hybrid representation (partially pro se and partially by counsel) in this case. McFarland represented Dolph during all pretrial proceedings, a portion of the guilt/innocence phase, and all of the punishment phase. During the time Dolph conducted the voir dire, McFarland was present, as stand-by counsel, to answer Dolph's questions. The record shows McFarland continued to participate in the trial—he conferred with Dolph, and the trial court recessed to allow "[t]he attorney[s] . . . to exercise their strikes," affording Dolph another opportunity to confer with McFarland. Dolph also conferred with McFarland during the portions of the guilt/innocence phase which Dolph conducted. The record shows that McFarland explained to the trial court that the State was about to stipulate to certain redactions to the videorecording of Dolph's arrest prior to Dolph's assertion of self-representation. Because the stipulation had not yet been entered, McFarland urged the trial court to secure it. McFarland also informed the court that there might be a witness favorable to Dolph and issued a subpoena to secure her presence. After Dial's testimony, the court allowed McFarland to conduct the remainder of the trial.

In cases where hybrid representation is allowed, "no question of waiver of counsel is involved." *See Maddox*, 613 S.W.2d at 286 (quoting *Phillips v. State*, 604 S.W.2d 904, 908 (Tex. Crim. App. 1979)). Thus, we reject Dolph's complaint that his waiver of the right to

counsel was involuntary because the court failed to give the requested admonishments.[14] *See id.* (admonishment required only where defendants represent themselves without assistance of counsel); *Phillips*, 604 S.W.2d at 907–08 (Tex. Crim. App. 1979) (concluding there was no waiver of counsel where counsel remained to assist defendant when necessary, "Appellant was not prohibited from conferring with his attorney," "counsel continued to make objections throughout the trial," and counsel "made the majority of the closing argument at the guilt or innocence phase and all of the argument at the punishment phase").[15] We overrule Dolph's point of error.

## III. Reformation of the Judgment

The Texas Rules of Appellate Procedure give this Court authority to reform judgments when necessary. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.). "Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act sua sponte

---

[14]After asserting his right to self-representation, a defendant may waive it by his subsequent conduct. *Robinson v. State*, 387 S.W.3d 815, 820 (Tex. App.—Eastland 2012, no pet.) (citing *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982); *Chapman v. United States*, 553 F.2d 886, 893 & n. 12 (5th Cir. 1977)). "The trial court may find a waiver of the right where it reasonably appears that the defendant has abandoned his initial request to represent himself or is vacillating on the issue." *Id*. at 820–21.

[15]Several courts of appeal have found that no waiver of counsel is necessary whenever stand-by counsel is appointed, regardless of the participation by counsel. *Walker*, 962 S.W.2d at 126–27; *Robertson*, 934 S.W.2d at 865–66; *Stell v. State*, No. 05-12-00578-CR, 2013 WL 3947179 at *3 (Tex. App.—Dallas Jul. 29, 2013, no pet.) (not designated for publication); *Newkirk v. State*, No. 05–12–00202–CR, 2013 WL 222278, at *2 (Tex. App.—Dallas Jan. 22, 2013, no pet.) (not designated for publication) (holding admonishments are not required); *Lopez v. State*, No. 14-07-01019-CR, 2009 WL 838198, at *2 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *Jordan v. State*, No. 08-05-22086-CR, 2007 WL 1513996, at *5 (Tex. App.—El Paso May 24, 2007, no pet.) (mem. op., not designated for publication); *but see Grant v. State*, 255 S.W.3d 642, 647–48 (Tex. App.—Beaumont 2007, no pet.). It is not necessary for us to address that issue as we find the ongoing participation of counsel during the trial amounted to a form of hybrid representation.

and may have a duty to do so." *Rhoten*, 299 S.W.3d at 356 (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, writ ref'd).

Dolph's punishment was within the range of punishment set forth in Section 12.42(d) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2013). This section does not contain provisions allowing imposition of the $10,000.00 fine assessed in this case. *See id.*; *Harris v. State*, 903 S.W.2d 514, 515 (Tex. App.—Texarkana 1995, no pet.) ("[T]here is no statutory provision for a fine as habitual offender."); *Goodwin v. State*, 694 S.W.2d 19, 29 (Tex. App.—Corpus Christi 1985, pet. ref'd) (holding trial court erred by assessing fine under Section 12.42(d)); *Carey v. State*, 677 S.W.2d 821, 823 (Tex. App.—Fort Worth 1984, no pet.) (concluding similarly). Thus, we modify the judgment to delete the $10,000.00 fine.

## IV. Conclusion

We modify the judgment to delete the assessment of a fine. As modified, we affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     December 4, 2013
Date Decided:       December 20, 2013

Publish

14