**Opinion filed August 21, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00217-CR

_____

## CHRISTOPHER ANTHONY BARSKI, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 432nd District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 1326714R**

### M E M O R A N D U M   O P I N I O N

Christopher Anthony Barski appeals his jury conviction for aggravated sexual assault of a child under fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2014). The jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty-four years. Appellant presents three issues on appeal. First, he asserts that he did not effectively waive his right to counsel. Second, he argues that the trial court erred when it did not let standby counsel share notes with him. Third, he argues

that he was denied due process of law because the State allowed him minimal sleep and kept some of his notes from him prior to the second day of trial. We affirm.

*Background Facts*

Appellant's brother and J.G. had three children together from their prior relationship. Appellant occasionally stayed in J.G.'s living room on weekends. Appellant would visit with J.G. and her children while he stayed at J.G.'s house. One of the children, S.E. (Appellant's niece), was the victim of Appellant's alleged sexual abuse. S.E. was eight years old at the time.

S.E.'s younger sister notified J.G. that Appellant would come into their bedroom and wake up S.E. S.E. confirmed to J.G. that it was true. S.E. went on to tell her mother that Appellant woke her up one night, took her into the kitchen to get food, and then took her into the living room with him. Once in the living room, Appellant sat S.E. on top of him. S.E. told J.G. that Appellant "was vibrating" and "doing bad things to her." Specifically, S.E. told J.G. that Appellant touched her "private part" after he unbuckled her pants. S.E. testified that Appellant touched her "in the place where he was not supposed to," which she agreed was her "private part." J.G. confronted Appellant about S.E.'s accusations, and Appellant responded, "I don't know why I did that," then he shook his head and apologized to J.G. Further, J.G. said that Appellant never denied the accusations.

Prior to trial, Appellant filed a pro se motion requesting permission to represent himself at trial. The trial court held a *Faretta* hearing to determine whether Appellant fully understood his right to counsel. *Faretta v. California*, 422 U.S. 806 (1975). The trial court admonished Appellant against representing himself and noted, "And -- and I'm going to tell you, quite frankly, I think it is not a good idea, but it is ultimately your absolute right under the federal and state constitutions to freely represent yourself." Appellant replied that he felt that it was in his best interest to represent himself. The trial court questioned Appellant extensively about his

2

education, his understanding of the law, the phases of trial, and his waiver of counsel. After the trial court admonished Appellant and Appellant had a discussion with his appointed counsel, Appellant elected to represent himself. Appellant's appointed counsel was ordered to serve as standby counsel at trial.

*Analysis*

In his first issue, Appellant argues that the trial court erred when it allowed him to represent himself at trial because he did not effectively waive his right to counsel. Appellant contends that the trial court abused its discretion in allowing him to represent himself because "his waiver of counsel was not done competently, knowingly and intelligently, and voluntarily."

In all criminal prosecutions, the accused has a right to the assistance of counsel for his defense. U.S. CONST. amend. VI; *Williams v. State*, 252 S.W.3d 353, 355 (Tex. Crim. App. 2008) (citing *Gideon v. Wainwright*, 372 U.S. 335, 340–45 (1963)). An indigent defendant is entitled to appointed counsel unless the defendant competently, intelligently, and voluntarily waives the right to counsel. *Williams*, 252 S.W.3d at 356; *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997). The Sixth Amendment also includes the reciprocal right of self-representation. *Williams*, 252 S.W.3d at 356 (citing *Faretta*, 422 U.S. at 818). The right to self-representation does not attach until it has been asserted clearly and unequivocally. *Id.*; *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986).

Once the right has been asserted, under *Faretta*, the court must admonish the defendant as to the "dangers and disadvantages of self-representation, so that the record will establish that he knows what 'he is doing and his choice is made with eyes open.'" *Williams*, 252 S.W.3d at 356 (quoting *Faretta*, 422 U.S. at 835). As stated by the court in *Williams*:

> When advising a defendant about the dangers and disadvantages of self-representation, the trial judge must inform the defendant "that there are

technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his *pro se* rights." [quoting *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988)] But a trial judge has no duty to inquire into an accused's "age, education, background or previous mental [health] history in every instance where an accused expresses a desire to represent himself[.]" [quoting *Goffney v. State*, 843 S.W.2d 583, 584–85 (Tex. Crim. App. 1992)]

*Id.* Courts indulge every reasonable presumption against waiver and do not presume acquiescence in the loss of fundamental rights. *Id.* The trial judge is responsible for determining whether a defendant's waiver is knowing, intelligent, and voluntary. *Id.* To assess whether a waiver is effective, courts consider the totality of the circumstances. This means that courts must examine the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Id.* The trial court is not required to follow a particular script of questions and warnings to establish a knowing and intelligent waiver. *See Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). As noted recently by the Texarkana Court of Appeals, *Faretta* establishes that if (1) the accused clearly and unequivocally declares to the trial court that he wants to represent himself and does not want counsel; (2) the record affirmatively demonstrates that the accused is competent, literate, and understanding and that he is voluntarily exercising his informed free will; and (3) the trial court warns the accused of its opinion that it is a mistake not to accept the assistance of counsel and that the accused will be required to follow all ground rules of trial procedure, then the right of self-representation cannot be denied. *Dolph v. State*, 440 S.W.3d 898, 902 (Tex. App.—Texarkana 2013, pet. ref'd) (citing *Faretta*, 422 U.S. at 835–36).

In the present case, the record affirmatively demonstrates that Appellant insisted on representing himself after the trial court warned him of the dangers and disadvantages of such a choice. Prior to trial, Appellant made a written motion to

4

represent himself despite already having the assistance of appointed counsel. At the hearing on the motion, Appellant argued that he wanted to represent himself because he felt that it was in "the best interest of everyone involved in the case." At the end of the hearing, Appellant again confirmed his desire to represent himself despite the trial court's recommendation not to do so.

The trial court determined that Appellant obtained his GED in 2006, and his appointed counsel testified to his belief that Appellant was competent. The trial court explained some dangers of self-representation, and when asked if he understood such dangers, Appellant responded in the affirmative. Specifically, the trial court advised Appellant that "quite frankly . . . it is not a good idea" to represent yourself. The trial court explained what an objection was and how Appellant would likely not know how to properly preserve any potential errors for appellate review. Further, the trial court explained that Appellant would waive his right to remain silent because he would necessarily have to speak in front of the jury during the trial. The trial court also informed Appellant of the range of punishment he faced if convicted.

In regard to issuing subpoenas to procure witness attendance, the trial court advised Appellant that he was "going to be held to the same standard" as an attorney doing the same work. Appellant was made aware that he would be responsible to file all pretrial motions in accordance with the law and that failure to do so would result in waiver. The trial court noted that there was a chance Appellant might waive some defenses to the crime charged because Appellant's knowledge of the law, as demonstrated by his answers to the trial court's questions, was limited. The trial court made clear that it would not be able to help Appellant at trial and stated, "After this hearing, you are on your own. And when this case comes to trial . . . you better be ready to go."

Near the conclusion of the hearing, the trial court reiterated that it was going through "all the potential warnings [it could] possibly give" to encourage Appellant not to represent himself. It again made clear to Appellant that "it's a mistake for you to" represent yourself. Appellant's appointed trial counsel also advised Appellant not to represent himself. After such admonishments and warnings, Appellant conferred with his counsel and nevertheless said, "I'll represent myself, Your Honor." Appellant also signed a waiver of his right to counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(f) (West Supp. 2014).

Appellant argues that the trial court "did not address sufficiently the areas such as nature of the charges, possible defenses to the charges and circumstances in mitigation thereof as required." We disagree. The trial court questioned Appellant about his understanding of the charges and how a potential conviction from those charges would affect his eligibility for parole. Although the Appellant understood only a "little bit" of the law in that regard, the trial court then asked Appellant's appointed counsel the same question and appointed counsel explained the law for Appellant. Appointed counsel also indicated that he had discussed the charges with Appellant. Furthermore, as indicated above, the trial court admonished Appellant that self-representation may result in an unintended waiver of defenses.

The record establishes that Appellant insisted on representing himself after the trial court warned him of the dangers and disadvantages of such a choice. We find that the record contains proper admonishments concerning pro se representation and all necessary inquiries to enable the trial court to assess Appellant's knowing exercise of the right to defend himself. *See Goffney*, 843 S.W.2d at 585. Appellant's persistence in asserting his right of self-representation despite the court's admonishments was all that was required in order for the court to determine that the assertion was made purposefully. *See Burgess v. State*, 816 S.W.2d 424, 426, 429

6

(Tex. Crim. App. 1991); *Blankenship*, 673 S.W.2d at 583 (quoting *United States v. Tompkins*, 623 F.2d 824, 825 (2d Cir. 1980)); *Dolph*, 440 S.W.3d at 904.

Appellant additionally asserts that the trial court should have terminated Appellant's self-representation and ordered standby counsel to take over his defense when potential jurors expressed concerns during voir dire about his ability to represent himself. We disagree with Appellant's contention that his purportedly deficient performance at trial rendered his decision to represent himself invalid. The Supreme Court noted in *Faretta*:

> We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of [his] right to defend himself.

*Faretta*, 422 U.S. at 836 (footnote omitted). We overrule Appellant's first issue.

In his second issue, Appellant argues that the trial court erred when it refused to let his appointed counsel share with him the information appointed counsel received via the State's open-file policy without first conducting an in camera inspection. Prior to Appellant invoking his right of self-representation, the State had an open file policy with Appellant's appointed counsel through which the State provided appointed counsel information to assist in his defense of Appellant. The State revoked the open file policy, however, when appointed counsel became standby counsel due to Appellant's election to represent himself.

The trial court informed Appellant that the information obtained by his appointed counsel under the open file policy could not be shared with Appellant. Rather, the trial court explained, if Appellant wanted to access the information he was "going to have to understand the Code of Criminal Procedure and file the appropriate Motions for Discovery." Appellant claims that the trial court should

have reviewed the information in camera before ruling that he was not allowed to receive any of the information from his standby counsel.

The record shows that Appellant did not object after the trial court ruled that standby counsel could not share the information with him. Additionally, Appellant did not ask the trial court to inspect the information in camera before making its ruling. Appellant failed to make any requests for discovery despite the trial court's instruction that Appellant could obtain the information at issue via applicable discovery procedures available to him.[1] Furthermore, the record shows that Appellant had access to everything his standby counsel received from the State's open file, despite the trial court's prior ruling that he would not have access to such information. At the end of the guilt/innocence phase of trial, the prosecutor said he had "turned over everything to Defense -- to the [standby] counsel . . . and I believe [standby counsel] has turned over everything, including police reports, copies of witness statements, videos of statements and made them available to the Defendant for purposes of this trial." Appellant's standby counsel then responded, "Standby counsel has done that."

"Ordinarily, to preserve an issue for appellate review, an appellant must have first raised the issue in the trial court." *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013); *see* TEX. R. APP. P. 33.1(a)(1).

> [A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

---

[1]Appellant did orally request to inspect grand jury testimony, which the trial court granted, but there was no grand jury testimony available in this case.

Error can only be committed when the trial judge refuses a specific request for action or takes action over objection. *Michaelwicz v. State*, 186 S.W.3d 601, 610 (Tex. App.—Austin 2006, pet. ref'd). Appellant did not preserve his complaint for appellate review because he did not request the trial court to conduct an in camera review of the information obtained by appointed counsel. Furthermore, the record affirmatively demonstrates that Appellant did in fact receive the information from appointed counsel "for purposes of [the] trial." We overrule Appellant's second issue.

In his third issue, Appellant contends that the trial court erred when it forced him to proceed with a hearing on a motion to suppress at the beginning of the second day of trial. The motion to suppress concerned a video interview of Appellant. At the beginning of the day's proceedings, Appellant informed the trial court that he was not permitted to go back to the jail facility where he was regularly incarcerated after the end of the previous day's proceedings and that he had not been able to get "any sort of solid sleep" until after breakfast because of the circumstances of his incarceration in a "holdover" cell. He stated that he was not ready to proceed. Appellant explained that he was "just really, really tired." He further claimed that he did not have access to some of his notes because they were kept at the other jail facility. The trial court noted that attorneys regularly deal with lack of sleep during trials and that Appellant participated during the previous day of trial without his notes.

After briefly questioning Appellant about the basis for his motion to suppress, the trial court proceeded with a hearing on the motion because "the State has [its] witness here." Detective Tony Miller of the Haltom City Police Department testified that he received a call from Appellant. Detective Miller made an appointment for Appellant to come to the police station to be interviewed. Detective Miller testified that Appellant was not placed under arrest or taken into custody at any time prior to

9

or during the interview and that he advised Appellant that he was free to leave at any time. He additionally testified that Appellant was not taken into custody after the interview concluded and that he was permitted to leave afterward. When the prosecutor passed Detective Miller to Appellant for cross-examination, Appellant advised the trial court as follows:

> Your Honor, considering the circumstances to the fact, you know, I was never placed under arrest or anything like that, I -- I guess it is pretty evident that this -- you know, this confession could be used in court, and I have no objection to that, Your Honor.

After a brief recess, the trial court advised Appellant that it was going to make arrangements for deputies to transport him to the jail facility where he was regularly incarcerated so that he could retrieve his paperwork. The trial court further advised that it was going to make arrangements for Appellant to be housed "downtown" for the remainder of the trial. The trial court then made the following statement to Appellant:

> What I want to give you a choice of, we just had the hearing where you said that you basically don't have an objection to the interview with the detective. We can either do the detective's testimony this morning and play the videotape this morning, and then you can have the afternoon off to rest and have your paperwork and be prepared to proceed tomorrow; or I can give the jury the morning off, give you the opportunity to get your paperwork and get some rest, and we could start back like around 2:00 o'clock this afternoon and then just work late tonight to proceed with that testimony. What -- what's your preference?

After conferring with standby counsel, Appellant advised the trial court that he was ready to proceed that morning and that he "[had] all that [he] was really needing right here." The trial court responded as follows:

> If you say that you are ready to proceed today and you feel fine and that you want to go forward, what I will assure you is that after the detective's testimony, I'm going to make sure that the deputies have all of your stuff from [the original jail facility] to you, and we'll also take

10

a longer lunch than usual to give you a little bit of time to rest up after the detective. Does that sound fair to you?

Appellant replied in the affirmative to the trial court's inquiry. Immediately prior to recessing for lunch, the trial court inquired into Appellant's preference for continuing the trial that afternoon. Appellant advised the trial court that he wanted to continue with the trial that afternoon.

A motion for continuance must be written and sworn. TEX. CODE. CRIM. PROC. ANN. arts. 29.03, 29.08 (West 2006). "A motion for continuance not in writing and not sworn preserves nothing for review." *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999). There is no due process exception to those requirements. *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012); *Anderson v. State*, 301 S.W.3d 276, 280–81 (Tex. Crim. App. 2009). Accordingly, Appellant did not present a valid motion for continuance based upon his oral statement that he was not ready for trial.

Even if Appellant had sufficiently presented a motion for continuance, we would review the trial court's ruling for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion. *Gallo*, 239 S.W.3d at 764; *Janecka*, 937 S.W.2d at 468. Appellant was not prejudiced by the trial court's decision to proceed with the motion to suppress. After Detective Miller offered his very brief testimony about the circumstances surrounding Appellant's interview, Appellant informed the trial court that he no longer had an objection to the admissibility of the interview. Accordingly, Appellant was not harmed by the trial court's decision to proceed with the motion to suppress. Afterward, the trial court offered Appellant various scheduling accommodations so that he could obtain

all of his notes and get some rest before proceeding further.  Appellant declined these offers and elected to proceed with the trial.  We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


August 21, 2015

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.