**Affirmed as Modified and Opinion Filed February 7, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-16-01499-CR
_____

### JAMES WHITE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1653525-U**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Boatright
Opinion by Justice Francis

James White appeals his conviction by a jury for aggravated robbery with a deadly weapon.

He brings seven issues challenging the sufficiency of the evidence to support his conviction, the

trial court's admission of certain evidence during the punishment phase of his trial, and the denial

of two motions for mistrial. Although we resolve appellant's issues against him, our review of the

record revealed the jury assessed an illegal fine and the judgment included that fine. Accordingly,

we reform the judgment to delete the fine and affirm the judgment as modified.

In his sixth issue, appellant contends the evidence was insufficient to show he committed

the crime of aggravated robbery. Specifically, appellant challenges the sufficiency of the evidence

to corroborate the testimony of his alleged accomplice in the offense. Under article 38.14 of the

Texas Code of Criminal Procedure, a conviction cannot be had upon the testimony of an

accomplice unless it is corroborated by other evidence connecting the defendant to the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). A challenge to the sufficiency of the evidence corroborating accomplice testimony is not the same as challenging the sufficiency of the evidence supporting the verdict as a whole. *See Cantelon v. State*, 85 S.W.3d 457, 460 (Tex. App.—Austin 2002, no pet.). For corroboration of accomplice testimony, all the law requires is that there be *some* non-accomplice evidence that *tends* to connect the accused to the commission of the offense. *Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997). The corroborating evidence may be direct or circumstantial, and need not be sufficient by itself to establish the defendant's guilt. *See Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Furthermore, the non-accomplice evidence need only connect the defendant to the offense, not every element of the offense. *See Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007). Although mere presence at the scene of the crime is insufficient to corroborate accomplice testimony, proof that the accused was at or near the scene around the time of the offense, when coupled with other suspicious circumstances, may tend to connect the accused to crime so as to furnish sufficient corroboration to support a conviction. *See Malone*, 253 S.W.3d at 257.

The offense in this case was an aggravated robbery occurring in an illegal gaming parlor. Surveillance footage from a security camera showed three men wearing black hoodies enter the establishment with guns. One of the men shown in the video was wearing black pants with black rectangular pockets on the front made from a different material than the rest of the pants. Several of the patrons and employees of the game room testified the men threatened them and took their wallets and the money out of the gambling machines. While the robbery was occurring, a woman working as a security guard by the front door called 911. Police were dispatched to the game room and arrived while the three men were still inside.

As the three men exited the game room, they saw the police and ran. Two went in one direction and the third went in a different direction toward an apartment complex. Officers chased the two men who ran together. They apprehended one who was later identified as Emmanuel Scott. The man with Scott who was carrying the cash boxes from the game room was never found.

A short time later, Nickolaus Dowdy, a security guard at a nearby apartment complex, called 911 to report a man hiding in the bushes. A police helicopter hovering overhead was shining a light on the ground below and Dowdy stated he saw the man in the bushes looking up at the helicopter. He thought the man was hiding from the police. Dowdy told the 911 dispatcher the man was wearing a white tank top and he saw him run across the street to a 7-11 store.

Dowdy's call to 911 was relayed to the officers at the robbery location. Two of the officers responded and went to the 7-11 to investigate. When the officers arrived, they saw appellant wearing a white tank top, covered in scratches, and sweating profusely despite the cold temperature outside. Dowdy watched the police approach the same man he had seen hiding in the bushes. As the officers approached, appellant began to walk away. When told to stop, he began to run. One of the officers chased appellant, caught him, and placed him under arrest. Among the items collected from appellant when he was booked into jail was a pair of black sweatpants with large rectangular pockets on the front made from a different black material than the rest of the pants. Appellant was indicted for robbery.

At trial, Scott testified appellant was one of the two other men who committed the robbery with him. Appellant contends Scott's identification of him as a perpetrator was not corroborated by sufficient evidence to support his conviction. We disagree. Appellant was seen hiding in the bushes not far from the location where the offense took place and he appeared to be hiding from a police helicopter searching the area. When the police approached him, he attempted to flee. At the time of his arrest, appellant was wearing the same pants worn by one of the perpetrators shown

in the surveillance video. Although appellant points to the fact the State failed to produce the hoodie the perpetrator was seen wearing in the video, or the money stolen from the game room, this does not negate the sufficiency of the evidence that was produced. Even insignificant circumstances may amount to satisfactory evidence corroborating accomplice witness testimony. *See Reed v.* State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).

Appellant argues the non-accomplice testimony was also insufficient to connect him to a deadly weapon. Corroborating evidence need not connect the defendant to every element of the offense. *See* Joubert, 235 S.W.3d 731; *Vasquez v. State*, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001) (corroboration requirements inapplicable to accomplice testimony regarding use or exhibition of deadly weapon). We conclude the combined weight of the non-accomplice evidence in this case tends to connect appellant to the offense. *See Cathey v. State*, 992 S.W.2d 460, 463 (Tex. Crim. App. 1999). We resolve appellant's sixth issue against him.

In his seventh issue, appellant contends the evidence is insufficient to support the jury's finding he used or exhibited a deadly weapon. When reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992).

Appellant argues the surveillance video showed the person the State said was him struggled with the slide on the gun he was carrying. The police later found a BB gun with a broken slide in the parking lot. Because the gun was broken, and no testimony showed the BB gun could cause death or serious bodily injury, appellant contends the State failed to prove he used or exhibited a deadly weapon in the offense.

At trial, however, Scott told the jury he was the one carrying the BB gun during the robbery and he believed appellant was carrying a real gun. The surveillance video showed all the perpetrators carrying guns and several witnesses said they saw multiple guns. The security guard testified she heard the men threaten to kill the people in the game room during the robbery.

Even if appellant was carrying the BB gun, the jury could have found him guilty under the law of party responsibility. The charge instructed the jury that "a person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Scott testified he, appellant, and a third man planned the robbery together. Because use of a deadly weapon was alleged as part of the offense, the jury's finding of guilt necessarily included a finding that appellant knew a deadly weapon would be used in commission of the offense. *See Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Appellant does not challenge the deadly weapon finding based on party responsibility. We conclude the evidence is sufficient to support the jury's finding. We resolve appellant's seventh issue against him.

During the punishment phase of appellant's trial, the State introduced evidence indicating appellant was a member of a gang. This evidence included photographs of appellant's tattoos and testimony about their meaning. Detective Barrett Nelson, who worked in the gangs unit of the Dallas Police Department, testified several of appellant's tattoos indicated he was a member of the

Crip gang in Dallas. Nelson said that, in his experience, gang members have committed an "abundance of crimes" from simple theft to capital murder. Nelson did not, however, have personal knowledge of appellant and, although his department kept a record of gang members they encountered, they did not have any documentation concerning him.

Appellant objected to both the photographs and Nelson's testimony on the ground of relevancy. He further objected that Nelson's testimony was more prejudicial than probative. The trial court overruled appellant's objections. In his first, second, and third issues, appellant asserts the trial court's rulings on the admissibility of the gang evidence were an abuse of discretion.

A trial court's decision to admit or exclude evidence is viewed under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Id*. At the punishment phase of a criminal trial evidence may be offered as to any matter the court deems relevant to sentencing, including evidence of the defendant's character. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07,§ 3(a)(1) (West Supp. 2017).

Appellant argues the trial court abused its discretion in admitting evidence related to his alleged gang membership because of the lack of evidence showing appellant actually participated in any gang activity. Appellant further argues that, even if the evidence was relevant, it was inflammatory and "gave the jury an incorrect basis on which to assess appellant's sentence" rendering it inadmissible under rule 403 of the Texas Rules of Evidence. *See* TEX. R. EVID. 403 (court may exclude relevant evidence if its probative value is outweighed by unfair prejudice.) This court has addressed substantially similar arguments before. *See Green v. State*, No. 05-14-01264-CR, 2015 WL 6690216, at *4–5 (Tex. App.—Dallas Nov. 3, 2015, no pet.) (mem. op.); *Hickman v. State*, No. 05-10-02150-CR, 2013 WL 3947140, at *2–3 (Tex. App.—Dallas July 29, 2013, no pet.). Evidence of a defendant's gang membership is relevant because it relates to

character.  *See Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995).  This evidence need not link the defendant to particular gang activity so long as the fact finder is (1) provided with evidence of the defendant's gang membership, (2) provided with evidence of character and reputation of the gang, (3) not required to determine if the defendant committed the gang activity, and (4) asked only to consider the defendant's reputation or character.  *Id*. at 457.  The evidence presented by the State in this case was narrowly tailored to these purposes.  *See Green*, 2015 WL 6690216 at *3 (same detective presenting similar testimony).

As for appellant's argument the gang evidence was inflammatory and gave the jury an improper basis upon which to make its punishment decision, the range of punishment appellant faced was twenty-five to ninety-nine years or life in prison because of two enhancement paragraphs.  The jury sentenced him to only twenty-six years in prison and a fine.  That the jury sentenced appellant to only one year over the minimum sentence allowed shows the evidence was not so unfairly prejudicial that there was a clear disparity between the degree of prejudice and the evidence's probative value.  *See id*. at *5.  Furthermore, appellant suffered no harm as the evidence did not have a substantial or injurious effect on the jury's determination of his punishment.  TEX. R. APP. P. 44.2(b).  We resolve appellant's first, second, and third issues against him.

In his fourth and fifth issues, appellant contends the trial court erred in denying two motions for mistrial during the punishment phase.  We review a trial court's decision to deny a mistrial for an abuse of discretion.  *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  A mistrial is the trial court's remedy for improper conduct that is so prejudicial the expenditure of further time and expense on the trial would be wasteful.  *Id*.  Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.  *Id*.

Appellant's first motion for mistrial was made in response to testimony by Officer Sergio Longoria.  Officer Longoria arrested appellant on the night of the robbery and transported him to

jail. Longoria testified that, while appellant was being transported, appellant told him he was a lifelong member of the Crip gang. Longoria asked appellant about the tattoo on his neck that said "hoe crusher." Appellant responded the tattoo meant he "crushes hoes."

Following this testimony, the defense conducted a voir dire examination of Longoria establishing he had not given *Miranda* warnings to appellant. The defense then objected to Longoria's testimony. The trial court sustained the objection and instructed the jury to disregard Longoria's statements for all purposes. The court denied, however, the defense's subsequent motion for a mistrial.

When the State resumed its examination of Longoria, it questioned him regarding whether appellant volunteered any information while they were together. Longoria responded that appellant's statement about being a lifelong member of the Crip gang was not made in response to a question. He stated that, as they were walking in the Lew Sterrett Justice Center, appellant said "this should be easy, I've been Cripping all my life." The defense made no objection to this testimony and the trial court later stated it was admissible as a res gestae statement. Appellant does not dispute on appeal the admissibility of this testimony.

Appellant argues the State purposefully elicited evidence obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). He further argues this evidence was clearly calculated to inflame the minds of the jury and was of such a character that it could not be withdrawn. With respect to the State's allegedly purposeful conduct, nothing in the record suggests the State intended to elicit inadmissible testimony. Appellant contends that, because the State questioned Longoria about appellant's voluntary statements after the trial court sustained the defense's *Miranda* objection, it must have known appellant's earlier statements were made without the benefit of *Miranda* warnings. We disagree. The State's exploration of whether appellant made

any voluntary statements to Longoria after it was revealed Longoria failed to give *Miranda* warnings does not indicate any prior knowledge about the absence of such warnings.

With respect to the inflammatory nature of the evidence, appellant focuses on the evidence "painting appellant as a gang member." As discussed above, evidence of appellant's membership in a gang is admissible. The specific statement about appellant's gang membership to which Longoria testified was made by appellant voluntarily during his arrest and was, therefore, admissible under article 38.22 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22,§ 5 (West Supp. 2017). The only other statement Longoria told the jury about was appellant saying his "hoe crusher" tattoo meant he "crushed hoes." This testimony is, primarily, just a restatement of what the tattoo says and a picture of the tattoo was admitted earlier. We cannot conclude this testimony is so highly prejudicial that the trial court abused its discretion in denying appellant's motion for mistrial. We resolve appellant's fourth issue against him.

Appellant's second motion for mistrial was made in response to a portion of the State's closing argument in the punishment phase. The State's argument began by focusing on the fact that the thirty-eight year old appellant had been in and out prison for twenty years before he committed the current offense. The State argued appellant could not be rehabilitated and "every time we gave him a chance, he went right out and committed another violent act." Then, after discussing appellant's gang membership, the State argued,

> There was no mitigating evidence as to why this man should not go away for the remainder of his life. There was no mitigating evidence that this man has changed, that he's sorry for what he did that night, that he's sorry for what he's done his whole life.

The defense objected saying the statement was a direct comment on appellant's failure to testify. The State responded it was commenting on the evidence. The trial court sustained the objection, instructed the jury to disregard the statement, and added a reminder that statements of counsel are not evidence. When the defense moved for a mistrial, the trial court denied the request.

In some cases, argument that a defendant has failed to demonstrate remorsefulness may amount to a comment on his failure to testify. *See Dickinson v.* State, 685 S.W.2d 320, 324–25 (Tex. Crim. App. 1984). Even assuming the argument made by State in this case could be considered a comment on appellant's failure to testify, we conclude the trial court did not err in denying appellant's motion for mistrial. Whether a motion for mistrial should have been granted involves the same considerations that attend a harm analysis. *See Hawkins*, 135 S.W.3d at 77. In determining whether improper jury argument warranted a mistrial at the punishment phase, we look at three factors: 1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); 2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and 3) the certainty of the punishment assessed (likelihood that the same punishment would have been assessed absent the improper comment). *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007).

The prosecutor's statement in this case was, at worst, a brief, indirect comment on appellant's failure to testify that was not repeated or emphasized. The trial court immediately instructed the jury to disregard the statement and reminded them the prosecutor's statements were not evidence. The charge given to the jury instructed them to determine appellant's punishment based on the evidence and the law submitted in the charge. The charge further instructed the jury it could not consider appellant's failure to testify for any purpose whatsoever as a circumstance against him. Finally, as noted above, the jury sentenced appellant to only one year's confinement above the minimum allowed. It does not appear, therefore, the prosecutor's comment had any negative effect on the assessment of punishment. We conclude the trial court did not abuse its discretion in refusing to grant a mistrial. *See id.* We overrule appellant's fifth issue.

Finally, in our review of this case, we note the trial court's charge on punishment allowed the jury to assess a fine up to $10,000 and they did. The $10,000 fine was included in the judgment.

Because the jury found appellant guilty of a felony offense and found the two enhancement paragraphs true, the punishment applicable to his offense was imprisonment "for any term of not more than 99 years or less than 25 years."  *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2017).  This punishment range does not include a fine, rendering the fine imposed illegal.  *See id.*; s*ee also Dolph v. State*, 440 S.W.3d 898, 908 (Tex. App.—Texarkana 2013, pet. ref'd).

The rules of appellate procedure give this Court authority to reform judgments when necessary.  TEX. R. APP. P. 43.2(b).  This authority is not dependent on the request of any party and we may act sua sponte.  *Dolph*, 440 S.W.3d at 908.  Reformation is appropriate when a judgment imposes an illegal fine.  *Id.*  Accordingly, we modify the trial court's judgment to delete the illegal fine.

We affirm the trial court's judgment as modified.


/Molly Francis/
MOLLY FRANCIS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)
161499F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMES WHITE, Appellant

No. 05-16-01499-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1653525-U.
Opinion delivered by Justice Francis.
Justices Lang and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:
The Fine of $10,000 is **DELETED**
As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered February 7, 2018.